IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD VAN POOL, | No. C 05-02596 WHA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION RE ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| CITY AND COUNTY OF SAN FRANCISCO et al., | |
| Defendants. / | |

**INTRODUCTION**

In this action alleging disability discrimination, the Court recently granted a motion for summary judgment by defendants the City and County of San Francisco and the San Francisco Fire Department. This memorandum opinion explains the reasoning.

**STATEMENT**

The San Francisco Fire Department had employed plaintiff since 1974. In 1993, he was promoted to the rank of H-20 Lieutenant, which he retained at the time of the hearing on the instant motion. Due to injuries plaintiff suffered on the job, the parties stipulated that he was disabled (Stipulated Statement of Facts ¶ B.1). He suffered from injuries to his knee, wrist and neck (Van Pool Decl. ¶ 6). In 1995, defendants assigned plaintiff to work in a temporary position to accommodate medical restrictions imposed by his injuries. In January 2002, Fire Chief Mario H. Treviño ordered that no employee could work more than a year in a position designed to accommodate a temporary injury. After that, a firefighter who still could not work

at his or her normal assignment could ask the department for reasonable accommodation under federal and state disabilities laws. The fire chief wrote to plaintiff in August 2002, telling him that his temporary assignment would end January 5, 2003 (Asaro Decl., Exh. V; Hecimovich Decl., Exh. EE).

Before plaintiff received that letter, he applied in 2002 for promotion to provisional positions as an H-30 captain and as an H-28 lieutenant in the training division. He lost out on both positions. Fire Chief Joanne Hayes-White stated that he was not selected because he did not have any recent experience fighting fires and because he did not have specialized skills that the successful candidates possessed. (His most recent active experience was in 1995.) When additional vacancies came up for H-28 positions later in 2002 and in 2003, Hayes-White did not consider plaintiff because she already had deemed him unqualified. The department also did not select plaintiff for either of two H-30 captain positions that he applied for in 2004, the first in the Investigative Services Bureau and the other in the Emergency Communications Department.

In late 2002, plaintiff requested accommodation pursuant to the Americans With Disabilities Act and state law. He asked to be assigned to any light-duty work normally performed by an H-28 training officer, an H-30 captain or an H-20 lieutenant (Van Pool Decl. ¶ 12). He said that his disability limited his capacity to perform manual tasks because it limited the amount of time he could spend standing or sitting continuously. David L. Chittenden, M.D., certified that it was medically necessary for plaintiff to avoid squatting and ladder climbing, and to limit his continuous amounts of time walking (four to six hours), standing (one hour) and sitting (two to three hours) (Bushong Decl., Exhs. X, Y).

The department offered plaintiff a position for an H-20 lieutenant, working on emergency communications. That assignment, however, required twelve-hour shifts, mostly sitting, which plaintiff's doctor ultimately said he was medically unable to perform. The department next offered plaintiff another job he could not do: a position for an H-20 lieutenant doing administrative work in the Assignment Office, which required typing. His wrist injuries prevented him from typing. After plaintiff told departmental officials that he could not type,

1 then-fire chief Treviño wrote a letter stating that departmental records did not indicate any
2 restriction that would prevent plaintiff from taking the position. Chief Treviño ordered plaintiff
3 either to report to work in the Assignment Office, request a leave of absence, or face a forced
4 leave or "other appropriate action" while the department looked for an alternative position for
5 him (Courtney Decl., Exh. 6). The department extended his temporary assignment into
6 February 2003 (Bushong Decl. ¶ 6). Plaintiff took a temporary position in the department's
7 print shop. In March 2003, the department offered plaintiff a job fitting firefighters for masks.
8 Instead, he took a disability leave so that doctors could operate on his wrist.

9 In March 2004, plaintiff's disability leave ended. His wrist had not recovered fully. His
10 doctor told the department that he could not work shifts lasting longer than ten hours. The
11 department offered a training position to plaintiff, accommodating his needs in August 2004.
12 He accepted the offer and continued to work in that position at the time of the hearing. With the
13 exception of the multiple times plaintiff took lucrative disability or medical leave, he always
14 was paid, always was assigned to a position and never was demoted.

15 Plaintiff filed the instant action, contending that defendants' refusal to offer him
16 positions as H-30 captain and H-28 lieutenant in the training division violated state and federal
17 anti-discrimination law.

**ANALYSIS**

19 Summary judgment is proper where the evidence shows that "there is no genuine issue
20 as to any material fact and that the moving party is entitled to judgment as a matter of law."
21 FRCP 56(c), (e). The nonmoving party has the burden of identifying with reasonable
22 particularity the evidence that precludes summary judgment. *Keenan v. Allen*, 91 F.3d 1275,
23 1279 (9th Cir. 1996). A genuine dispute as to a material fact exists if there is sufficient
24 evidence for a reasonable finder of fact to return a verdict for the nonmoving party. On
25 summary judgment, the "evidence of the non-movant is to be believed, and all justifiable
26 inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248,
27 255 (1986).

3

Plaintiff originally brought six claims. Counsel for plaintiff stated at the hearing on the instant motion, however, that plaintiff had decided to pursue only two of those claims (Tr. of Proceedings of Aug. 3 at 30).[1] One was the allegation that defendants discriminated against plaintiff due to his disability, in violation of the ADA, 42 U.S.C. 12112, by not appointing him to vacant H-30 captain positions or to H-28 lieutenant positions in the training division.[2] Section 12112(a) bars an employer from discriminating against a qualified individual with a disability on the basis of his or her disability in hiring, advancement, and other terms, conditions and privileges of employment. *See* 42 U.S.C. 12111(2), (5)(A) (defining which entities and employers are covered).

The other claim was for violation of the Fair Employment and Housing Act, California Government Code Section 12940(a), which bars employers from discriminating against a person in the terms, conditions, or privileges of employment, on the basis of physical disability.

To maintain either claim, a worker must first establish a prima facie case of discrimination. That includes showing that the person is a "qualified individual with a disability — that is, a person who, with or without reasonable accommodation, can perform the essential functions of her job." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) (internal quotation marks omitted). The worker also must show that she suffered an adverse employment action. If the plaintiff makes out a prima facie case, the "burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. If the employer meets this burden, the presumption of intentional discrimination disappears, but the plaintiff can still prove disparate treatment by, for instance, offering evidence demonstrating that the employer's explanation is pretextual." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 50, n.3 (2003).

---

[1] The claims that were dropped were (1) that defendants failed to engage in an interactive process with plaintiff to accommodate his disabilities; (2) that defendants violated California Government Code Section 12940(m); (3) that defendants violated public policy as set forth in California Government Code Section 12900 *et seq.*; and (4) that defendants retaliated against plaintiff for asserting claims under Sections 12940(a) and 12940(m), and under the Americans With Disabilities Act (Tr. 26, 29–30; Compl.).

[2] Plaintiff originally alleged discrimination in not allowing him to remain in the temporary position he had occupied since 1995. He dropped that aspect of the claim at the hearing (Tr. 25).

4

The FEHA test is similar. To make out a prima facie case, the plaintiff must provide evidence that (1) he or she was disabled, (2) he or she was qualified for the position sought, (3) he or she suffered an adverse employment action, and (4) "some other circumstance suggests discriminatory motive." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 355 (2000). The FEHA burden-shifting scheme is identical to that under the ADA. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005).

### 1.   PRIMA FACIE CASE.

Defendants argued that there was no evidence upon which a jury reasonably could have concluded that plaintiff was qualified for the positions he sought but was denied. They claimed that he was not qualified because he did not have recent experience fighting fires. Fire Chief Hayes-White, who was an assistant deputy chief in charge of training during the time that plaintiff was applying for jobs in that division, submitted a declaration that described the "job requirements" set forth in the general order advertising the H-28 training officer position. In fact, the general order did not list any "requirements" but only "*Desired* Skills." Hayes-White, however, also stated:

> "To be qualified for selection as an H-28 Training Officer, an officer would need to have recent field experience employing the full range of fire suppression equipment . . . . Lt. Van Pool lacked recent field experience, an essential qualification for the H-28 Training Officer position. The instruction of new hires . . . requires a competency that I believe can only be developed and maintained through ongoing practice."

Hayes-White, however, stated contradictorily that she "did not reach the issue of whether Lt. Van Pool *would be able to perform the essential functions* of the H-28 position with reasonable accommodations" (Hayes-White Decl. ¶ 13, Exh. A) (emphasis added).

Hayes-White's statement that she did not consider whether plaintiff "would be able to perform the essential functions of the H-28 position" could have been seen by a reasonable jury as conflicting with her statements that he was not qualified. A reasonable jury might have resolved this conflict by deciding that she never had assessed whether he was qualified. They also could have interpreted the requirement of "recent" field experience as encompassing service in 1995. "Recent" is a vague term. For these reasons, the evidence could have

5

permitted a jury reasonably to conclude that plaintiff was qualified for the H-28 training officer positions, including those later positions for which plaintiff also applied and was rejected.

Defendants also argued that plaintiff could not show that he was qualified to be a provisional captain in the Investigative Services Bureau because he "did not meet the written requirements" for the job. Just as with the H-28 training officer position, there was no mention in the written advertisement for applicants of any "requirements." Instead, it only communicated "[d]esired qualifications." The department stated what it wanted but it left the door open to accepting less. Defendants pointed out that plaintiff did not have all the qualifications of the person eventually hired (Hayes-White Decl. ¶ 20, Exh. P). This, however, did not show that plaintiff was unqualified. The issue is not whether he was the *most* qualified, only whether he had the *minimum* required qualifications.

Defendants also claimed that plaintiff did not qualify for the position as a provisional captain in the Emergency Communications Division. They were correct. The posting for the job included a list of "*Minimum* Qualifications," including training in "Criteria Based Dispatch (CBD)" and "[o]ne year experience in communications" (*id.*, Exh. R) (emphasis added). Plaintiff pointed to nothing in the record to indicate that he had such experience.

Plaintiff made out a prima facie case as to the jobs in the Investigative Services Bureau and in the training division but not as to the job in emergency communications.

**2.  NONDISCRIMINATORY REASONS FOR ADVERSE JOB ACTIONS.**

Plaintiff did not dispute that defendants offered nondiscriminatory reasons for each of the adverse job actions about which he complained. Defendants described why each candidate who beat out plaintiff for an H-30 captain position or an H-28 training-division position had qualifications plaintiff lacked. The Court agreed that defendants put forth legitimate, non-discriminatory reasons for not giving the jobs to plaintiff.

**3.  PRETEXT.**

Plaintiff claimed that seven items of evidence supported his claim of pretext (Opp. 17–19). In light of defendants' extensive efforts to accommodate plaintiff's injuries since 1995, these items did not establish grounds on which a reasonable jury could have found that

6

defendants' non-discriminatory reasons were pretextual and that the decisions were motivated by plaintiff's disability.

Perhaps the strongest evidence was the deposition testimony by Suzanne Wong, the fire department's ADA coordinator, that defendants did not follow their usual procedure in accommodating plaintiff's disability. She began by describing conversations she had with her superior about plaintiff's application:

> Q: Did [personnel director Jesusa Bushong] say anything to you that made it sound as if Ron [Van Pool] had deliberately asked his doctor to add this [medical] restriction?
>
> A: I recall that she said something to that fact. . . . I recall that she says something to the fact that the restriction would change after . . . after he was placed or after he submitted the forms.
>
> \*   \*   \*
>
> A: I feel that under 02A1 [the policy limiting, to one year's duration, temporary positions created for injured workers] there are 15, 16, 17 people who apply for this type of accommodation. Other people were accommodated, and at that time Lt. Van Pool is the only one who did not get accommodation and there were no . . . any information on vacant positions or budget or any facts that I see why I should treat him differently . . . . So I went to talk to Jesusa about that, and every time I asked her she cut me off and interrupted me. She did not give me [an] answer. Just told me that I did not need to know. So this went on for about two months. Around March of 2003, I wrote an e-mail. I said "I don't feel comfortable signing [a] letter [to plaintiff]." From then on, I think she handled the case herself.
>
> Q: And it was your job, at the time, to handle the accommodation request?
>
> A: But I wasn't really handling this case. I was directed what to do, what to send out, when to call him, what to say when I called him.
>
> Q: By Jesusa?
>
> A: Yes.
>
> \*   \*   \*
>
> Q: What did you feel was not handled properly [about plaintiff's case]?
>
> A: I feel different because I didn't have any information through [sic] support why he's different

(Van Pool Decl., Exh. F).

7

Plaintiff's other evidence on pretext was:

- Defendants' assignment of plaintiff to two positions, the emergency-communications and the Assignment Office jobs, that he was unable to take due to his disabilities.
- Defendants' incorrect determination that he had rejected light-duty work (Van Pool Decl., Exh. H).
- An accusation by a fire-department nurse that plaintiff was taking disability leave to avoid working in the Assignment Office (*id.* ¶ 19).
- The fact that departmental officials negatively assessed plaintiff's job performance in documents filed in this litigation but did not do so earlier (Siragusa Decl. ¶¶ 7–10).
- Fire Chief Treviño's letter to plaintiff threatening to put him on leave or to take other appropriate action if plaintiff did not report to work in the Assignment Office (Courtney Decl., Exh. 6).
- The fact that supposedly unqualified workers were assigned to the jobs that plaintiff did not get (Opp. 18).

Even if a jury had considered this evidence collectively, it could not have concluded reasonably that defendants' asserted reasons for not putting plaintiff into an H-28 or an H-30 position were pretextual. The comments of Jesusa Bushong, the human-resources director, indicated that she may have suspected that plaintiff was not truly disabled. Such suspicion was not discrimination on the basis of plaintiff's disability. Such suspicion indicated, at most, that defendants discriminated against plaintiff because they thought he was *not* disabled. The same was true for defendants' incorrect determination that plaintiff had rejected light-duty work. The close involvement of the human-resources director, to the exclusion of the ADA coordinator, must be viewed in light of the fact that at least some of these events took place after plaintiff had begun communicating with the department through an attorney. Such circumstances are tense and fraught with risk for an employer. The department responded by deviating from its

8

usual procedures. There is nothing about such a reaction that undercuts the non-discriminatory reasons offered by defendants for their decisions.

Defendants' assignment of plaintiff to two positions, as an emergency-communications H-20 lieutenant and in the Assignment Office, that he was unable to take due to his disabilities also did not indicate pretext. The medical restrictions that kept plaintiff out of those positions were not revealed clearly by him in his application for reasonable accommodations. The department's initial failure to recognize those restrictions therefore was not evidence of pretext. After being told of the restrictions, the department acted appropriately to find suitable positions.

The fact that departmental officials negatively assessed plaintiff's job performance would have indicated pretext only if there were some reason to believe that these negative assessments were given due to his disability, or that they were not genuine. In fact, the assessments provided by Assistant Deputy Chief Thomas Siragusa described legitimate reasons for negatively evaluating plaintiff. Siragusa stated that it took plaintiff all day to finish two-to-three hour tasks, that he frequently wandered through the offices chatting, that his training materials were "unsophisticated" and that he presented them "in a scripted, non-interactive fashion" (Siragusa Decl. ¶¶ 8–10). Plaintiff presented no evidence that these allegations were untrue or were motivated by bias.

Fire Chief Treviño's letter to plaintiff threatening to put him on leave or to take other appropriate action if plaintiff did not report to work in the Assignment Office indicated at most that defendants viewed plaintiff as one who was trying to shirk his duties and had to be dealt with in an authoritative and strict manner.

Finally, plaintiff's allegation that unqualified workers got the jobs was unsupported by any evidence. He claimed that those firefighters were unqualified because they did not have the rank of H-20 lieutenant. There was nothing in the job advertisements, however, to indicate that the H-20 rank was a requirement. Other evidence indicated that these firefighters had specific skills and experience that defendants desired (Hayes-White Decl. ¶¶ 19–21).

At best, the supposed evidence of pretext showed that defendants were mistrustful of plaintiff and hostile toward him because of a suspicion that he was faking his inability to do

9

various jobs. All of this must be viewed in light of defendants' extensive efforts to accommodate plaintiff's disabilities. They placed him in a light-duty position from 1995 to 2003 to accommodate those injuries. They offered him short-term positions and various permanent positions until finally finding him a permanent, accommodated position as a training officer. During all this time, plaintiff never lost pay. All of those facts weighed against a finding of pretext. No reasonable jury could conclude, based on such evidence, collectively, that defendants' stated reasons for not putting plaintiff in the jobs he wanted were pretextual. Plaintiff failed to overcome defendants' legitimate, nondiscriminatory reasons for their decisions. Defendants therefore were entitled to summary judgment. The department went beyond the call of duty in trying to accommodate plaintiff. No reasonable jury could find otherwise.

## CONCLUSION

For the reasons stated, defendants' motion for summary judgement was **GRANTED**.

Dated: August 23, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE